# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                    No. CR 09-1253 JB

CARL ERNESTO ROMERO,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Government's Motion in Limine and Notice of Rule 404(b) Evidence, filed April 16, 2010 (Doc. 58)("Motion").  The Court held an evidentiary hearing on February 25, 2011.  The primary issue is whether, pursuant to rule 404(b) of the Federal Rules of Evidence, the Court should allow Plaintiff United States of America to present evidence regarding Defendant Carl Ernesto Romero's possession and use of a shotgun in two incidents, on February 20, 2009 and April 9, 2009, respectively.  Because the Court believes evidence relating to the incidents is offered for the purpose of showing Romero's intent, is relevant to proving premeditation, and is more probative than prejudicial, the Court will allow the United States to introduce the evidence under certain conditions.  The Court therefore grants the United States' Motion in part.

## FACTUAL BACKGROUND

The United States intends to introduce evidence at trial regarding two incidents in which Romero used a .410 gauge shotgun.  The United States further asserts that it will present evidence that Romero assaulted and killed Naayaitch Friday with a Rossi .410 gauge shotgun.  The United

States intends to prove the following allegations at trial.

1.     **Evidence that the United States Intends to Introduce.**

The United States intends to introduce evidence pursuant to rule 404(b).  The United States intends to show that Romero possessed, carried, and used a shotgun, when he was in a dispute with another person or when he perceived that third parties threatened him in two separate incidents.  The United States plans to introduce this evidence allegedly to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

a.     **DWI Incident.**

The first incident involved a driving-while-intoxicated ("DWI") traffic stop of Romero by Owingah Police Office Bryce Gabaldon on February 20, 2009.  After Romero failed his field sobriety tests, Gabaldon arrested him for careless driving and DWI.  In his inventory of the vehicle, Gabaldon found a loaded .410 gauge shotgun.  Romero stated that "that some guys were picking on his friends, so he went for the gun for protection and was going to shoot them if they came back."  Offense Incident Report (dated February 14, 2009), filed April 16, 2010 (Doc. 58-1).  Gabaldon released the vehicle and the gun to Romero's mother.

b.     **Santa Clara Pueblo Incident**.

The second incident involved an aggravated assault in which Romero pointed his shotgun at two persons and fired it into the air on the Santa Clara Pueblo.  On the evening of April 9, 2009, or during the early morning hours of April 10, 2009, after an argument at a house party, Romero pointed his shotgun at Bonnie Maestas and Ashley Snyder.  He also fired the shotgun twice.  Although not reported to tribal law enforcement, Maestas disclosed this incident to the Federal Bureau of Investigation about two weeks later during its investigation of this case.  The United States intends to call Maestas and Snyder, along with Case Agent Arlen Scholl, to testify about these facts

and circumstances.

    **2.**    **The Alleged Facts of the Crime Charged**.

The United States intends to prove that, on or about April 11, 2009, Romero assaulted and killed Friday using his Rossi .410 gauge shotgun. These acts took place on the San Ildefonso Indian Pueblo, in Santa Fe County, District of New Mexico. The assault was allegedly initiated because Romero and Friday had been arguing about a failed cocaine deal that Romero was supposed to broker. Friday was trying to recover the purchase money belonging to his friend, Fabian Madrid.

After Romero dropped off Madrid, Romero's vehicle had a low front tire, so he stopped in an arroyo on the San Ildefonso Pueblo and ordered the three passengers, including Friday, out of the car. While he checked the tire, Friday continued to berate Romero, who became angry. Romero then pulled out his shotgun from the car and shot Friday in the chest, knocking him to the ground. Friday begged for his life. Instead, Romero returned to his car, loaded another shell into the shotgun, and shot Friday in the face. Friday died of shotgun wounds of the chest and head.

## PROCEDURAL BACKGROUND

Romero was indicted on charges of first-degree murder and use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c) 1111, and 1153. In addition, he is charged with assault with a dangerous weapon -- a shotgun -- resulting in serious bodily injury in violation of 18 U.S.C. §§ 113(a)(3), 113(a)(6), and 1153. The United States filed its Motion requesting a pre-trial ruling from the Court that evidence of other crimes, wrongs, and acts which Romero committed are admissible under rule 404(b). In addition, the United States intends this Motion to serve as Notice of Intent to use Evidence at trial pursuant to rule 404(b). The United States contends that evidence relating to the two incidents is admissible under rule 404(b), because the United States will offer the evidence for the proper purpose of showing proof of motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident, and because the evidence is relevant and is not unduly prejudicial.

On September 23, 2010, Romero filed his Response in Opposition to Government's Motion in Limine and Notice of Rule 404(b) Evidence. See Doc. 72 ("Response"). Romero contends that the DWI incident is too dissimilar and too remote in time from the charged crimes to be probative. Romero further contends that the Santa Clara Pueblo incident is more prejudicial than probative and amounts to inadmissible character evidence.

At the February 25, 2011 hearing, the United States put on evidence that it intends to present at trial. The United States first called Gabaldon, who testified regarding the DWI incident. Gabaldon testified that, while on patrol on February 20, 2009 in Ohkay Owingeh, he stopped Romero's vehicle in response to a report of a possible DWI. See Transcript of Hearing at 5:14-7:2 (Ortega, Gabaldon)("Tr.").[1] Romero, whom Gabaldon knew personally from his childhood, was driving the vehicle. See id. at 7:3-13 (Ortega, Gabaldon). Gabaldon arrested Romero for DWI and took him into custody, and during the inventory search of the vehicle, Gabaldon found a loaded .410 gauge shotgun on the floorboard of the backseat. See id. at 8:2-9:1 (Ortega, Gabaldon). Gabaldon testified: "I asked Mr. Romero what the reason . . . was for the [shotgun] in his vehicle [and] he stated to me that there was some guys picking on his friends so he got the gun for protection because he was going to shoot them if they came back." Id. at 9:6-9 (Ortega, Gabaldon). Romero was in lawful possession of the shotgun. See id. at 10:9-14 (Bustamante, Gabaldon). Gabaldon released the shotgun and vehicle to Romero's mother. See Tr. at 9:10-17 (Ortega, Gabaldon).

Maestas, Snyder, and Lucas Willow testified regarding the Santa Clara Pueblo incident.

---

[1] The Court's citations to the transcript refer to the court reporter's original, unedited version. The final transcript may contain slightly different page and/or line numbers.

Maestas, Snyder, Willow, Romero, and others were drinking at a gathering at a friend's residence on the night of April 9, 2009, or morning of April 10, 2009.  See Tr. at 13:18-15:2 (Ortega, Maestas); id. at 24:25-25:23 (Ortega, Snyder).  Snyder drank approximately three shots of Crown Royal in two or three hours.  See id. at 24:25-25:23 (Ortega, Snyder).  Maestas drank three or four shots of alcohol, and two or three beers.  See id. at 21:1-4 (Bustamante, Maestas).  Willow consumed one beer.  See id. at 34:20-35:1 (Ortega, Willow).  Willow testified that Romero was intoxicated from drinking beer and shots of alcohol.  See id. at 38:2-23 (Ortega, Willow).

Shortly before Maestas and Snyder left, Maestas and Romero were joking with and teasing each other.  See id. at 26:6-15 (Ortega, Snyder).  Maestas "made a comment about West Side, and [she] kn[e]w that [Romero] was affiliated with North Side."  Id. at 15:9-10 (Maestas).  West Side and North Side are gangs.  See id. at 15:11-16:1 (Ortega, Maestas).  Maestas alleges that Romero affiliates himself with the North Side.  See id. at 16:2-4 (Ortega, Maestas).  The interaction between Maestas and Romero grew heated at times, but Maestas did not perceive the interaction to escalate and "everybody laughed."  id. at 16:5-10 (Ortega, Maestas); id. at 26:10-24 (Ortega, Snyder).

When Maestas and Snyder left the residence, Romero followed them out, retrieved a .410 gauge shotgun from his vehicle, and approached them.  See id. at 16:10-17:13 (Ortega, Maestas); id. at 27:6-29:6 (Ortega, Snyder); id. at 35:19-36:3 (Ortega, Willow).  Romero pointed the shotgun at Maestas and "scream[ed]": "Start talking now bitch.  Start talking shit bitch."  Id. at 17:15-16 (Ortega, Maestas).  Individuals came out of the friend's residence, and attempted to calm Romero and to remove the shotgun from him, at which time he fired the shotgun into the air.  See id. at 18:10-19:14 (Ortega, Maestas); id. at 29:14-30:9 (Ortega, Snyder); id. at 35:17-18, 36:14-37:9 (Ortega, Willow).  Maestas and Snyder entered Snyder's vehicle and fled, and as they drove away, they heard another shot fired.  See id. at 19:15-23 (Ortega, Maestas); id. at 30:15-17 (Ortega,

Snyder).

Maestas did not report the incident to the authorities until the FBI approached her regarding this case within a week.  See id. at 20:1-9 (Ortega, Maestas); id. at 21:10-18 (Bustamante, Maestas); id. at 22:4-11 (Ortega, Maestas).  Snyder did not  report the incident to the authorities, but gave a report of the incident when the FBI contacted her in the summer of 2010.  See Tr. at 31:3-17 (Ortega, Snyder).

At the hearing, the United States stated that it has two eye witnesses to Friday's killing, and it does not expect that Romero will deny that he had and used the .410 gauge shotgun.  The United States asserted that it intends to introduce evidence about the DWI and Santa Clara Pueblo incidents to show that Romero used the shotgun to "protect himself and/or to intimidate other people."  Tr. at 42:23-43:9 (Ortega, Court).  The United States further asserted that the incidents support showing premeditation, because they "show the way Mr. Romero was thinking during that period of time; that if anybody was going to cross [him] or have a dispute with him, that his plan and his thought process was to grab for that shotgun and use it."  Tr. at 44:5-10 (Ortega).

The Court suggested that, if it allowed the evidence, it would exclude evidence about Romero's intoxication and his arrest from the DWI incident, and it would exclude evidence regarding Romero's alleged gang affiliation from the Santa Clara Pueblo incident, to which the United States agreed.  See Tr. at 52:17-20, 54:2-13 (Court, Ortega).  Romero represented that, if the Court allows evidence regarding the Santa Clara Pueblo incident to come in, he prefers that the Court exclude evidence about his alleged gang affiliation, but that the Court allow evidence that people were drinking.  See Tr. at 48:24-50:6 (Court, Bustamante).

## LAW REGARDING RELEVANT EVIDENCE

The threshold issue in determining the admissibility of evidence is relevance.  As a baseline,

under the Federal Rules, all evidence that is relevant is admissible -- unless another law or rule excludes the evidence -- and any evidence that is not relevant is not admissible.  See Fed. R. Evid. 402.  The standard for relevance is very liberal.  See United States v. Leonard, 439 F.3d 648, 651 (10th Cir. 2006)("Rule 401 is a liberal standard."  (citing United States v. McVeigh, 153 F.3d 1166, 1190 (10th Cir. 1998))).  The evidence need only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  See United States v. Leonard, 439 F.3d at 651.  "[A] fact is 'of consequence' when its existence would provide the fact-finder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict," but it only need to have "any tendency" to do so.  United States v. Jordan, 485 F.3d 1214, 1218 (10th Cir. 2007).  See United States v. Leonard, 439 F.3d at 651; United States v. McVeigh, 153 F.3d at 1190.

On the other hand, although the threshold burden is low, the rules do "not sanction the carte blanche admission of whatever evidence a defendant would like.  The trial judge is the gatekeeper under the Rules of Evidence."  United States v. Jordan, 485 F.3d at 1218.  As the advisory committee noted, "certain circumstances call for the exclusion of evidence which is of unquestioned relevance."  Fed. R. Evid. 403 advisory committee's note.  Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative."  Fed. R. Evid. 403.  A district court has "broad discretion to examine whether the probative value of evidence substantially outweighs the danger of unfair prejudice."  United States v. Reddeck, 22 F.3d 1504, 1508 (10th Cir. 1994). See United States v. Poole, 929 F.2d 1476, 1482 (10th Cir. 1991).

## LAW REGARDING RULE 404(b)

Under rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith.  See Fed. R. Evid. 404(b).  Rule 404(b) provides:

> **(b) Other Crimes, Wrongs, or Acts.** -- Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b).  In other words, one cannot present evidence the relevance of which is based on the forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too.  The rule, however, has a number of "exceptions" -- purposes for which such evidence will be admissible.  Those purposes include proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  See Fed. R. Evid. 404(b).  The Supreme Court of the United States has enunciated a four-part process to determine whether evidence is admissible under rule 404(b).  See Huddleston v. United States, 485 U.S. 681, 691-92 (1988).  The United States Court of Appeals for the Tenth Circuit has consistently applied that test.

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)(citing United States v. Roberts, 185

F.3d 1125 (10th Cir. 1999)).  See United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir. 2002);

United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing Huddleston v. United States,

485 U.S. 681, 691-92 (1988)).

Rule 404(b)'s prohibition finds its source in the common-law protection of the criminal

defendant from risking conviction on the basis of evidence of his character.  See United States v.

Dudek, 560 F.2d 1288, 1295-96 (6th Cir. 1977); 22 C. Wright & K. Graham, Federal Practice and

Procedure: Evidence § 5239, at 428, 436-37 & 439 (1991).  In United States v. Phillips, 599 F.2d

134 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit noted, in addressing

rule 404(b)'s precepts, that the rule addresses two main policy concerns:

> (1) that the jury may convict a "bad man" who deserves to be punished not because
> he is guilty of the crime charged but because of his prior or subsequent misdeeds;
> and (2) that the jury will infer that because the accused committed other crimes he
> probably committed the crime charged.

United States v. Phillips, 599 F.2d at 136.

When bad act evidence is both relevant and admissible for a proper purpose, "the proponent

must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may

be the inference that the defendant has the propensity to commit the bad act."  United States v.

Morley, 199 F.3d 129, 133 (3d Cir. 1999)(alterations omitted).  The Tenth Circuit has also stated

that district courts must "identify specifically the permissible purpose for which such evidence is

offered and the inferences to be drawn therefrom."  United States v. Youts, 229 F.3d 1312, 1317

(10th Cir. 2000)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)).  "[A] broad

statement merely invoking or restating Rule 404(b) will not suffice."  United States v. Youts, 229

F.3d at 1317.

The Tenth Circuit has recognized the probative value of uncharged, unrelated acts to show

-9-

motive, intent and knowledge, whether the acts involved previous conduct or conduct subsequent to the charged offense if the uncharged acts are similar to the charged crime and sufficiently close in time.  See United States v. Olivo, 80 F.3d 1466, 1468-69 (10th Cir. 1996)(finding the district court did not abuse its discretion when it admitted evidence about an event over one year after a defendant's arrest); United States v. Bonnett, 877 F.2d 1450, 1461 (10th Cir. 1989)(holding that evidence about events over a year after the charged conduct was not " too remote in time and unrelated to the transactions with which he was charged").  This similarity may be shown through "physical similarity of the acts or through the 'defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.'"  United States v. Queen, 132 F.3d 991, 996 (4th Cir. 1997)(quoting United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978).  See United States v. Bonnett, 877 F.2d at 1461 ("The closeness in time and the similarity in conduct [are] matters left to the trial court, and [its] decision will not be reversed absent a showing of abuse of discretion.").  The more similar the act or state of mind, the more relevant the evidence becomes.  See United States v. Queen, 132 F.3d at 996.  Moreover, when establishing identity, although the uncharged crime must be similar to the charged offense if it is unrelated to the charged offense, it need not be identical.  See United States v. Gutierrez, 696 F.2d 753, 755 (10th Cir. 1982).

## ANALYSIS

The United States contends that it should be permitted to introduce evidence pursuant to rule 404(b) that the defendant has, on at least two other occasions, possessed, carried and used the alleged murder weapon, his .410 gauge shotgun, when he was in a dispute with another person or when he perceived a threat from third parties.  The United States contends that the evidence is admissible against Romero, because it will be offered for the proper purposes of showing proof of

motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident and is relevant and is not unduly prejudicial.  The United States further asserts that Romero's possession of the shotgun during the DWI incident and the Santa Clara Pueblo incident is not being offered to show a propensity for this type of behavior.

Romero responds that the evidence relating to the DWI incident is too remote in time and dissimilar to be probative.  He further contends that the Santa Clara Pueblo incident is more prejudicial than probative.  Romero asserts the evidence amounts to inadmissible character evidence.

The Court finds that the evidence is being offered for the proper purpose of showing Romero's intent, which is relevant to proving premeditation.  The Court believes this evidence is more probative than prejudicial, especially because the Court will impose conditions on its admission.  The Court will further, upon Romero's request, issue a limiting instruction pursuant to rule 105.

I. **THE COURT WILL ALLOW THE UNITED STATES TO INTRODUCE EVIDENCE REGARDING THE DWI INCIDENT.**

The United States intends to introduce evidence regarding the DWI incident.  The United States contends that the shotgun that Gabaldon seized from Romero's vehicle is "probably the same weapon" he used to shoot and kill Friday.  Motion at 4-5.  The United States asserts that Romero's possession of the .410 gauge shotgun during his DWI stop and arrest, and his statements to the arresting officer regarding his intent to protect himself and his friends, is probative of Romero's plan, motive, opportunity, intent and lack of mistake -- which the United States asserts are all legitimate bases under rule 404(b) for the admission of this evidence.

Romero responds that the alleged facts of the DWI incident fail to properly meet the four-part test, articulated in Huddleston v. United States.  Romero asserts that the DWI stop bears

no similarity to the charge of first-degree murder by use of a firearm.  He further asserts that the discovery of a shotgun was the result of Gabaldon's search of his vehicle for evidence of alcohol use, which occurred approximately two months before the incident in this case.  On this basis, Romero contends that the DWI incident is too dissimilar and too remote in time to be probative.

The Court finds that the evidence regarding the DWI incident is admissible.  In accordance with the Supreme Court's holding in Huddleston v. United States, the Tenth Circuit has set forth a test for the admission of evidence of bad conduct under rule 404(b):

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d at 762 (citations omitted).

The Court finds that the DWI incident is being "offered for a proper purpose."  United States v. Zamora, 222 F.3d at 762 (citations omitted).  The United States asserts that it intends to introduce evidence relating to the DWI incident for the purpose of showing Romero's plan, motive, opportunity, intent and lack of mistake.  Romero states that "[t]he Government has articulated proper purposes under Rule 404(b)," but contends that the "real impact of the introduction of such evidence in the minds of a jury would be to view it as evidence of criminal propensity."  Response at 2-3. While the Court is concerned that the United States' listed purposes merely parrot the rule's language,[2] at the hearing the United States clarified that it is offering the evidence to "show the way

---

[2] In United States v. Edwards, 540 F.3d 1156 (10th Cir. 2008), the Tenth Circuit expressed disapproval of arguments that mimic rule 404(b) language:

> In arguing before the district court that this evidence was admissible, the government

Mr. Romero was thinking during that period of time; that if anybody was going to cross [him] or have a dispute with him, that his plan and his thought process was to grab for that shotgun and use it." Tr. at 44:5-10 (Ortega).  The Court concludes that the United States is offering the DWI incident for at least one proper purpose -- to establish Romero's intent, which is relevant to proving premeditation.  See United States v. Headman, 594 F.3d 1179, 1187 (10th Cir. 2010)("[T]he element of premeditation necessary for murder in the first degree . . . requires the formation of a specific intent."); United States v. Serawop, 410 F.3d 656, 663 (10th Cir. 2005)("First degree murder, on the other hand, is a more serious offense that requires proof of something in addition to this basic

---

simply asserted without explanation or analysis that the convictions were being offered "to prove the defendant's intent in the current case, to prove his knowledge, to prove his motive in this case, to prove that there was no mistake or accident, and to corroborate the testimony of several other witnesses who will testify at trial to seeing the defendant possess and sell cocaine and possess, sell, and use marijuana." (R. Doc. 335 at 3-4.) The district court did not require the government to clarify how the evidence was relevant for these purported purposes, but merely noted the proffered purposes and held that the evidence was offered for a proper purpose, that it was relevant, and that the probative value was not substantially outweighed by its potential for unfair prejudice.

540 F.3d at 1163.  The Tenth Circuit recently rejected a defendant's argument that the United States 404(b) notice failed to provide notice of the purpose for which it planned to use 404(b) evidence, because the notice parroted the language of the rule:

Cardinas asserts the government's Rule 404(b) notice was inadequate because it contained only the boilerplate, scattershot argument that the May 2007 drug sale was admissible to prove Cardinas's "motive, opportunity, intent, preparation, plan, knowledge, identity, . . . absence of mistake or accident and his consciousness of guilt."   While in the past we have expressed reservations with this scattershot approach because it fails to adequately frame the issue for opposing counsel and the court, see Edwards, 540 F.3d at 1163, in this case it was clear the government's Rule 404(b) evidence was offered for the proper purpose of proving Cardinas's intent.

United States v. Cardinas Garcia, 596 F.3d 788, 797 n.3 (10th Cir. 2010)(citations to the record omitted).  Similarly, in this case, based on the content of the United States' Motion and its argument at the hearing, the Court is convinced that the United States seeks to introduce the evidence for the proper purpose of proving Romero's intent -- specifically his premeditation.

murder intent. . . .  [F]irst degree murder requires additional proof of a specific intent -- including premeditation, deliberation, or a killing in the commission of certain enumerated felonies." (citing United States v. Wood, 207 F.3d 1222, 1228 (10th Cir. 2000); United States v. Bailey, 444 U.S. 394, 405 (1980))).

Romero is charged with first degree murder.  The jury instruction for first degree murder under 18 U.S.C. § 1111 states:

> This law makes it a crime to unlawfully kill a human being with malice aforethought.  Every murder committed by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing, is murder in the first degree.
>
> To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> First: the defendant caused the death of the victim named in the indictment;
>
> Second: the defendant killed the victim with malice aforethought;
>
> Third: the killing was premeditated; and
>
> Fourth: the killing took place within the [territorial] [special maritime] jurisdiction of the United States.
>
> To kill ''with malice aforethought'' means either to kill another person deliberately and intentionally, or to act with callous and wanton disregard for human life.  To find malice aforethought, you need not be convinced that the defendant hated the person killed, or felt ill will toward the victim at the time.
>
> In determining whether the killing was with malice aforethought, you may consider the use of a weapon or instrument, and the manner in which death was caused.
>
> A killing is ''premeditated'' when it is the result of planning or deliberation.  The amount of time needed for premeditation of a killing depends on the person and the circumstances.  It must be long enough for the killer, after forming the intent to kill, to be fully conscious of that intent.
>
> You should consider all the facts and circumstances preceding, surrounding, and following the killing, which tend to shed light upon the condition of the

-14-

defendant's mind, before and at the time of the killing.

You are instructed that the alleged murder occurred within the [territorial] [special maritime] jurisdiction of the United States, if you find beyond a reasonable doubt that such offense occurred in the location described in the indictment.

10th Cir. Crim. Pattern Jury Instr. § 2.52, at 175 (Feb. 2006).  See United States v. Headman, 594 F.3d 1179, 1185 (10th Cir. 2010)(reciting these instructions).[3]

Romero's statements that "there was some guys picking on his friends so he got the gun for protection because he was going to shoot them if they came back," Tr. at 9:6-9 (Ortega, Gabaldon), and his carrying a shotgun in his vehicle for the purpose of dealing with enemies reveals his intent and state of mind, and supports showing Romero's "planning or deliberation" to use the shotgun against those that crossed him.  10th Cir. Crim. Pattern Jury Instr. § 2.52, at 175.  The DWI incident is relevant to the jury's consideration of "facts and circumstances preceding, surrounding, and following the killing, which tend to shed light upon the condition of the defendant's mind, before and at the time of the killing."  Id.  The parties acknowledged at the hearing that the trial will mostly address whether Romero's actions towards Friday were premeditated.  See Tr. at 43:22-44:2 (Court, Ortega); id. at 48:16-23 (Bustamante).  The Court concludes that the United States intends to introduce the evidence about the DWI incident for the proper purpose of establishing Romero's

---

[3] Section 924(c)(1) also requires the United States to prove that Romero "knowingly 'use[d]' a firearm."  10th Cir. Crim. Pattern Jury Instr. § 2.45, at 153.  Additionally, 18 U.S.C. § 113(a)(3) requires the government to prove "intent to do bodily harm."  18 U.S.C. § 113(a)(3).  Romero's intent on these matters does not appear to be in dispute, as the parties indicated that the trial will primarily concern whether Romero acted with premeditation.  See Tr. at 43:22-44:2 (Court, Ortega); id. at 48:16-23 (Bustamante).  Consequently, the Court will not allow the evidence for the phantom issue of establishing Romero's intent to use the shotgun or bodily harm Friday.  See United States v. Velarde, No. CR 98-0391 JB, 2008 WL 5993210, at *38 (D.N.M. May 16, 2008)(Browning, J.)("While Velarde has articulated one or more proper purposes, the more serious issue is whether Velarde truly needs the newly discovered evidence to prove these legitimate issues. In other words, are these issues 'phantom' issues or real issues.").

premeditation, by "show[ing] the way Mr. Romero was thinking during that period of time; that if anybody was going to cross [him] or have a dispute with him, that his plan and his thought process was to grab for that shotgun and use it." Tr. at 44:5-10 (Ortega). The statement is some evidence that his shooting of Friday was premeditated, and not the result of a rash reaction. The statement shows that he did not just carry the weapon to intimidate or to deter, but to shoot people in certain circumstances. It shows why he had the weapon, that he planned to use, and that he was deliberate in his actions. It gives some insight into his state of mind. That Romero made the statement well in advance of the alleged crime supports a finding of premeditation because, because it was long enough for him to be fully conscious of his intent to kill. The Court thus concludes that the United States intends to use the evidence regarding the DWI incident for a proper purpose of establishing Romero's specific intent, which is relevant to establishing premeditation. See United States v. Zamora, 222 F.3d at 762 ("(1) the evidence must be offered for a proper purpose; [and] (2) the evidence must be relevant . . . ." (citations omitted)).

Romero contends that the DWI incident is too old and dissimilar to be probative of his intent. First, the Court concludes that a six week lapse between the DWI incident and Friday's killing does not require the Court to exclude the evidence; this goes more to the weight of the evidence, and the Court should rely on cross-examination to expose the worth of the evidence rather than excluding the evidence. In United States v. Olivo, the Tenth Circuit held that a district court did not abuse its discretion by admitting events that occurred more than a year after the defendant's arrest. 80 F.3d at 1469. The Tenth Circuit stated:

> Olivo first challenges our conclusion that the district court did not abuse its discretion by admitting evidence of Olivo's subsequent arrest for transporting a large quantity of marijuana. He argues our ruling is contrary to the majority rule that "evidence of subsequent narcotics activity separated by more than a year from the charged offense is not relevant under the Federal Rules of Evidence Rule 404(b) to

-16-

prove a defendant's knowledge or intent to commit the earlier crime." To the extent Olivo argues there is an absolute rule regarding the number of months that can separate the charged offense and subsequent similar acts, we disagree. See, e.g., United States v. Beasley, 809 F.2d 1273, 1277 (7th Cir. 1987) ("Questions about 'how long is too long' do not have uniform answers; the answers depend on the theory that makes the evidence admissible."). Cf. United States v. Cuch, 842 F.2d 1173, 1178 (10th Cir. 1988) (noting there is no absolute rule regarding the time that can separate a prior act from the charged offense). Regardless of whether 404(b) evidence is of a prior or subsequent act, its admissibility involves a case-specific inquiry that is within the district court's broad discretion. See United States v. Bonnett, 877 F.2d 1450, 1461 (10th Cir. 1989) (reviewing the admission of subsequent bad acts and explaining that "[t]he closeness in time and the similarity in conduct [are] matters left to the trial court, and [its] decision will not be reversed absent a showing of abuse of discretion").

80 F.3d at 1468-69. See United States v. Bonnett, 877 F.2d at 1461 (holding that evidence about events over a year after the charged conduct were not " too remote in time and unrelated to the transactions with which he was charged"). Unlike the one-year distance at issue in United States v. Olivo and United States v. Bonnett, the DWI incident occurred approximately six weeks before Friday's killing. The Court believes that Romero's statement about his reason for carrying a shotgun in his vehicle is relevant to showing premeditation when he allegedly retrieved the shotgun from his vehicle and used it six weeks later, because it reveals his state of mind and plan. See Huddleston v. United States, 485 U.S. at 685 ("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct."). The statement suggests that Romero had thought through why he carried his shotgun and had thought about when he would use it.

Romero's argument that the DWI incident is dissimilar is unavailing. First, Romero driving in his vehicle with his shotgun is similar to the charge incident, because both involve Romero carrying a shotgun in his vehicle. Moreover, unlike repeated acts, from which a jury may infer

-17-

intent, the Court does not believe that the relevance of Romero's expression of his intent and state

of mind requires as much circumstantial similarity.  In <u>United States v. v. Queen</u>, the United States

Court of Appeals for the Fourth Circuit stated:

> Once an act is assumed to be done, "the prior doing of other similar acts . . . is useful
> as reducing the possibility that the act in question was done with innocent intent.
> The argument is based purely on the doctrine of chances, and it is the mere repetition
> of instances . . . that satisfies our logical demand." <u>Wigmore on Evidence</u>, § 302, at
> 245 (Chadbourn rev.1979)(footnote omitted).  But in order for repeated actions to
> have probative value, the earlier actions must be similar in nature to the charged acts.
> [<u>United States v. Mark</u>, 943 F.2d 444, 448 (4th Cir.1991)]; [<u>United States v. Rawle</u>,
> 845 F.2d 1244, 1247 n.3 (4th Cir.1988)]; Wigmore, <u>supra</u>, at 245 ("[T]he essence of
> this probative effect is the likeness of the instance").

132 F.3d at 996 (citing <u>United States v. Mark</u>, 943 F.2d 444, 448 (4th Cir.1991).  Unlike repeated

acts, Romero's alleged statement directly expressed his reason for carrying a shotgun in his vehicle.

Thus, while the circumstances are similar, the statement's probative value is less dependent on that

circumstance similarity.  The Court, therefore, rejects Romero's contention that his statement is

inadmissible because the DWI incident is dissimilar from the alleged killing.

The Court is concerned about the potential undue prejudice allowing evidence about the

entire DWI incident may cause Romero.  The Court believes, however, that, based on restrictions

it will impose on the introduction of the evidence, "the probative value of the similar acts is [not]

substantially outweighed by its potential for unfair prejudice."  <u>United States v. Zamora</u>, 222 F.3d

at 762 (citations omitted).  The Court will not allow the United States to introduce evidence of

Romero's intoxication or his arrest; these facts are not relevant to showing intent.  The United States

may introduce evidence that, in the course of a traffic stop, Gabaldon located the shotgun and asked

Romero for what purpose he had the weapon, and Romero's response.  The United States may also

introduce evidence that the weapon was returned.  Based on these restrictions, the Court believes

that any potential undue prejudice is mitigated below the probative value of Romero's statements

to establishing his intent.  Moreover, "pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted."  United States v. Zamora, 222 F.3d at 762 (citations omitted).[4]  The Court will therefore allow the United States to introduce evidence regarding the DWI incident.

## II.    THE COURT WILL ALLOW THE UNITED STATES TO PRESENT EVIDENCE REGARDING THE SANTA CLARA PUEBLO INCIDENT.

The United States contends that the evidence it intends to produce and prove regarding the Santa Clara Pueblo incident is similar to the charged assault in both manner and means, and it occurred within a day or two of the charges in the present Indictment.  The United States notes that Romero is charged with assault in this case.  It contends that the aggravated assault on Santa Clara Pueblo involved the use of a shotgun, which the United States asserts is "likely the same weapon" used in the assault and homicide before this court.  Motion at 4.  The United States further contends that the event of the Santa Clara Pueblo assault that it intends to produce is similar to the charged assault in both manner and means, and it occurred within a day or two of the charges in the present Indictment.  The United States further contends that the incident is probative of Romero's state of mind, plan, motive, and intent.  Romero responds that the Santa Clara Pueblo incident is more prejudicial than probative.  He further asserts that the evidence amounts to inadmissible character evidence.

The Court agrees that the evidence regarding the Santa Clara Pueblo incident is admissible. First, it is similar to the charged incident, because both incidents involve Romero allegedly responding to behavior he finds offensive by retrieving a shotgun from his vehicle and confronting

_____

[4] If Romero wants a limiting instruction, he should draft and submit the limiting instruction to the Court.

the person offending him.  Moreover, The Court concludes that the evidence is being offered for the proper purpose of establishing Romero's state of mind, plan, and intent, and is relevant to proving premeditation.  See United States v. Zamora, 222 F.3d at 762 ("(1) the evidence must be offered for a proper purpose; [and] (2) the evidence must be relevant . . . ." (citations omitted)).  The Santa Clara Pueblo incident increases the probability that, during the time of Friday's killing, Romero intended to use his shotgun to threaten and attack parties that crossed or disrespected him.  His prior incident of reaching for his shotgun in response to threats and to assault individuals that he believed disrespected him supports showing premeditation -- the crux of what is at issue at trial -- because it makes it more likely than without the evidence that Romero proceeded with "planning or deliberation," because he previously engaged in this course of conduct with little provocation -- mere taunting -- and little hesitation.  10th Cir. Crim. Pattern Jury Instr. § 2.52, at 175.  The Santa Clara Pueblo incident is also relevant to the jury's consideration of "facts and circumstances preceding, surrounding, and following the killing, which tend to shed light upon the condition of the defendant's mind, before and at the time of the killing."  Id.  The United States has the difficult task of proving that, in a relatively short time, Romero formed the specific intent to kill Friday with premeditation.  That is a formidable task.  The Court is reluctant to exclude relevant evidence, even if it is not overwhelming evidence, that Romero had the premeditation to commit first-degree murder, given the heavy burden the United States faces here.

The Court is concerned about the potential undue prejudice allowing evidence about the Santa Clara Pueblo incident may cause Romero.  The Court believes, however, that, given the restriction it will impose on the introduction of the evidence, "the probative value of the similar acts is [not] substantially outweighed by its potential for unfair prejudice."  United States v. Zamora, 222 F.3d at 762 (citations omitted).  The Court will require that the United States not introduce

references to gangs or Romero's alleged gang affiliation.  Because Romero does not request it, the Court will not require the United States to omit references to the use of alcohol.  Moreover, "pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted."  United States v. Zamora, 222 F.3d at 762 (citations omitted).[5]

The Court recognizes that there two incidents, particularly the Santa Clara Pueblo incident, may show some propensity for committing shotgun crimes --  because  he used a shotgun at the Santa Clara Pueblo, he likely used it to shoot Friday.  Rule 404(b) evidence almost always has some propensity evidence; that is the reason for limiting instructions.  But that Romero used the shotgun is not the real issue in this case.  The real issue is his intent -- whether he was able to form the required specific intent in such a short period of time to establish premeditation.  Romero's statements to Gabaldon and his use of his shotgun once before when he felt disrespected is relevant to the fact that he had thought through the use of the shotgun before he shot Friday.

**IT IS ORDERED** that (i) the Government's Motion in Limine and Notice of Rule 404(b) Evidence, filed April 16, 2010 (Doc. 58), is granted as set forth above; (ii) Plaintiff United States of America shall expressly instruct Owingah Police Office Bryce Gabaldon not to mention Defendant Carl Ernesto Romero's intoxication or arrest; and (iii) Plaintiff United States of America shall expressly instruct any witnesses testifying about the Santa Clara Pueblo incident, including Bonnie Maestas, Ashley Snyder, or Lucas Willow, to make no reference to gangs or Romero's alleged gang affiliation.  Romero reserves the right to object to other details of the incidents that he believes are irrelevant, other than Romero's statement to Gabaldon, Romero's dispute with Maestas

---

[5] If Romero wants a limiting instruction, he should draft and submit the limiting instruction to the Court.

and Snyder; and Romero's use and discharge of the shotgun.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Roberto D. Ortega
Rumaldo R. Armijo
  Assistant United States Attorneys
United State Attorney's Office
District of New Mexico
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*


Edward O. Bustamante
Albuquerque, New Mexico

     *Attorney for the Defendant*